WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William J. Litzendorf,<br><br>        Plaintiff,<br><br>v.<br><br>Property Maintenance Solutions LLC, et al.,<br><br>        Defendants. | No. CV-16-00271-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment of Defendant Property Maintenance Solutions, LLC, et. al, (Doc. 56) and the Motion for Summary Judgment of Plaintiff William Litzendorf (Doc. 58). For the following reasons, the Court denies both motions.

**Background**

In May 2014, William Litzendorf began working as a handyman for Cluff Property Management, LLC (CPM). CPM is a property management company based in Arizona that manages residential rental properties. CPM is owned by Daniel Shreeve, Chad Cluff, and James Israel. CPM uses Property Maintenance Solutions, LLC (PMS) to coordinate the maintenance needs of CPM's properties. PMS is owned by three members: Wallin Holdings, LLC, Empire Capital, LLC, and Mission Capital, LLC. Wallin Holdings is owned by James Wallin, Empire Capital is owned by Daniel Shreeve and Lindsay Shreeve, and Mission Capital is owned by Chad Cluff and Brittany Biggs. PMS's sole purpose is to schedule and coordinate the maintenance needs of CPM. Mr.

Litzendorf was hired after responding to a Craigslist advertisement and interviewing with Mr. Wallin and Mr. Shreeve. Mr. Litzendorf signed an agreement that classified him as an independent contractor. Mr. Litzendorf was initially paid $18.00 an hour, and his pay was later raised to $20.00 an hour.

When a residential rental property managed by CPM needed maintenance work, CPM would notify PMS of the work opportunity. PMS would then send a text message or email to the maintenance workers, such as Mr. Litzendorf. The maintenance workers would then respond to the opportunity, on a first-come basis. Maintenance workers would go to the rental property and do the repair work. When special tools or materials were required, either the maintenance workers themselves, Mr. Shreeve , or Mr. Wallin would purchase such materials from Home Depot. After the maintenance work was completed, Mr. Litzendorf would submit a work order to Mr. Shreeve. Mr. Shreeve reviewed the work order and would then issue a weekly paycheck to Mr. Litzendorf.

Mr. Litzendorf alleges that he was an "employee" of Defendants, and therefore entitled to the protections of the Fair Labor Standards Act (FLSA). Mr. Litzendorf estimates that he worked 50–60 hours per week, but claims that he was never paid overtime compensation. Defendants agree that Mr. Litzendorf was never paid overtime compensation, but argue that Mr. Litzendorf was an "independent contractor" and therefore not owed overtime compensation. Mr. Litzendorf further alleges that he was not fully compensated for time spent travelling to work sites or purchasing necessary materials. Defendants respond that Mr. Litzendorf was compensated for all reasonable time spent on these activities.

The parties filed cross motions for summary judgment on both FLSA claims and Arizona Wage Act claims.

**Discussion**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## II.    Analysis

The FLSA requires that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In order for the FLSA protections to attach, however, Defendants must be "employers" under the Act and Plaintiff must be an "employee" under the Act.

**A. Disputes of Fact Preclude Summary Judgment on Whether Plaintiff is an Employee or an Independent Contractor**

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id*. at § 203(d). To "employ" is "to suffer or permit to work." *Id*. at § 203(g). The wide definitions of these key terms have led courts to develop "expansive interpretation[s] of the definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the

Act." *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (internal citation omitted).

While employees are covered under the FLSA and entitled to the protections the FLSA provides, independent contractors are not. As a threshold matter, "[e]conomic realities, not contractual labels determine employment status for the remedial purposes of the FLSA." *Id.* at 755. It is not determinative, therefore, that Mr. Litzendorf signed a contract that classified him as an independent contractor. The Ninth Circuit uses a variety of factors to determine whether a worker is a covered employee or an independent contractor: (1) "the degree of the alleged employer's right to control the manner in which the work is to be performed;" (2) "the alleged employee's opportunity for profit or loss depending on his managerial skill;" (3) "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;" (4) "whether the service requires a special skill;" (5) "the degree of permanence of the working relationship;" and (6) "whether the service rendered is an integral part of the alleged employer's business." *Id.* at 754. These six factors are to be considered holistically and the "presence of any individual factor is not dispositive of whether an employee/employer relationship exists." *Id.* In this way, the ultimate goal of the numerous factors is to determine the "economic realities of the total circumstances." *Id*. at 756.

Material disputes of fact prevent this Court from granting summary judgment to either party. For instance, the parties dispute whether or not Mr. Litzendorf was permitted to hire workers or assign work to others. (Doc. 59, ¶ 8; Doc. 61 CSOF, ¶ 8). Similarly, they dispute whether Mr. Litzendorf was prohibited from performing maintenance and repair work for other companies. (Doc. 59, ¶ 8; Doc. 61 CSOF, ¶ 8). There are inconsistent statements about whether Mr. Litzendorf was required to provide his own truck and tools. (Doc. 59, ¶ 10; Doc. 61 CSOF, ¶ 10; Doc. 59-6, pgs. 2–5). The parties disagree about whether Mr. Litzendorf was required to be on call 24 hours a day. (Doc. 59, ¶ 16; Doc. 61 CSOF, ¶ 16). They also disagree about whether Mr. Litzendorf was required to complete maintenance work within 48 hours of receiving the assignment.

(Doc. 59, ¶ 7; Doc. 61 CSOF, ¶ 7; Doc. 63, ¶ 25). Additionally, there is some discussion of Mr. Litzendorf stopping work while sick. (Doc. 61 SSOF, ¶ 24). The length of this break is unclear and the parties dispute whether Mr. Litzendorf was required to ask for time off or not. (Doc. 63, ¶ 40). These are key factual disputesthat would affect the analysis of many of the factors laid out in *Driscoll*. Because of these factual disputes, summary judgment is inappropriate.

**B. Disputes of Fact Preclude Summary Judgment on Whether the FLSA's Maximum Hours Provision Provides Coverage if Plaintiff is an Employee**

In order to be subject to the FLSA's maximum hours rules, an employee must be "engaged in commerce or the production of goods for commerce" (individual coverage) or be "employed by an enterprise engaged in commerce" (enterprise coverage). 29 U.S.C. § 207(a)(1). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States." *Id.* at § 203(b). Goods are produced for commerce "where the employer intends, hopes, expects, or has reason to believe that the goods or any unsegregated part of them will move in such interstate or foreign commerce." 29 C.F.R. § 776.21(a). For enterprise coverage, the employer engaged in commerce must have yearly revenue of $500,000 or greater. 29 U.S.C. § 203(s)(1)(A)(ii). An employee can be covered under the FLSA if either individual or enterprise coverage attaches. *Zorich v. Long Beach Fire Dept. and Amb. Service, Inc.*, 118 F.3d 682, 686 (9th Cir. 1997).

**1. Individual Coverage**

Courts have adopted a broad reading of what it means for an employee to be engaged in interstate commerce. For example, employees doing security or maintenance work for a business engaged in interstate commerce are considered to be engaged in interstate commerce themselves. *See Kirschbaum Co. v. Walling*, 316 U.S. 517, 525–26 (1942) (noting that the "employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the

1  production of goods for commerce'"); *Houser v. Matson*, 447 F.2d 860, 863 (9th Cir.
2  1971) ("It is well established that the maintenance of a habitable building is essential to
3  production of goods for interstate commerce, and activities of persons such as elevator
4  operators, watchmen, carpenters, painters, and maintenance people are covered by the
5  Act."); *Revolorio v. C&R Canoga Park*, 09-CV-04572-ODW, Doc. 15 (C.D. Cal. 2010)
6  (noting that while plaintiffs had failed to state a claim in the current complaint, "if
7  Plaintiffs can allege that their maintenance work caused them to handle goods that ever
8  moved in interstate commerce, that they handled those products only in Los Angeles
9  County is irrelevant for determining FLSA coverage"). Similarly, there is no requirement
10 that the amount of interstate commerce engaged in be substantial. *See Mabee v. White
11 Plains Pub. Co.*, 327 U.S. 178, 181–82 (1946) (finding that a newspaper, with one-half of
12 one percent of its circulation regularly out of state, is engaged in interstate commerce).
13 However, the "sporadic or occasional shipments of insubstantial amounts of goods" was
14 not intended to qualify as interstate commerce. *Id.* at 181. *See also Walling v.
15 Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943) (stating that if a "substantial part" of
16 an employee's job relates to interstate commerce or goods in interstate commerce, then
17 the FLSA applies); 29 C.F.R. § 779.109.

18       The parties do not dispute that Mr. Litzendorf sometimes purchased materials
19 necessary to complete his maintenance work (or that Mr. Wallin or Mr. Shreeve would
20 purchase the materials for Mr. Litzendorf in other instances). These materials were
21 generally purchased from Home Depot, a company which sells products originating
22 outside of Arizona. (Doc. 59-7, pgs. 3–8; Doc. 63-1, pgs. 2–11). This raises a dispute of
23 fact as to whether Mr. Litzendorf did in fact handle goods that traveled in interstate
24 commerce. There are additional disputes about the frequency with which Mr. Litzendorf
25 or the Defendants would purchase supplies for the maintenance jobs. (Doc. 63, ¶ 14; Doc.
26 61 SSOF, ¶ 22). It is not clear whether this was a regular activity or just a "sporadic"
27 occurrence. These factual disputes prevent summary judgment.

28       **2. Enterprise Coverage**

An "enterprise" means "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). FLSA coverage attaches to an "enterprise engaged in commerce or in the production of goods for commerce." *Id.* at § 207(a)(1). Such an enterprise exists when it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii).

### a. Single Enterprise

In this case, neither CPM nor PMS individually makes over $500,000 in a year.[1] Therefore, in order to have enterprise liability attach, CPM and PMS would need to constitute a single enterprise. Three requirements must be met for businesses to be grouped together in determining FLSA coverage. The businesses must have "related activities, unified operation or common control and common business purpose." *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 915 (9th Cir. 2003). Activities are related if they are "the same or similar." *Id.* The Ninth Circuit has not defined "common business purpose" other than to say that it is "generally found where there are related activities and common control." *Id.* at 916. The parties dispute whether the activities of property *management* and property *maintenance* are sufficiently related and similar. (Doc. 59, ¶ 3; Doc. 61 CSOF, ¶ 3). Similarly, the parties dispute whether CPM and PMS share a common business purpose. Defendants argue that property maintenance is not a critical component of property management. Plaintiffs claim the opposite.

Control means "the power to direct, restrict, regulate, govern, or administer the performance of the activities." 29 C.F.R. § 779.221. Common control, thus, means "the sharing of control and it is not limited to sole control or complete control by one person

---

[1] Defendants' own tax records attached to their Motion for Summary Judgment show that CPM and PMS combined make over $500,000 in a year. Therefore, if they are a single enterprise the statutory minimum would be met. (Doc. 57, Ex. A).

- 7 -

or corporation." *Id*. Some facts related to common control are not in dispute. Mr. Shreeve is listed as the agent for both CPM and PMS. (Doc. 59-2, pgs. 2, 4). Mr. Shreeve is an owner of CPM and an owner of Empire (which in turn is a part-owner of PMS). Mr. Cluff is an owner of CPM and an owner of Mission (which is also part-owner of PMS). Both Mr. Wallin, of PMS, and Mr. Shreeve interviewed Mr. Litzendorf for the job. (Doc. 59, ¶ 5; Doc. 61 CSOF, ¶ 5). Both are also listed on the Home Depot invoices. (Doc. 59-7, pgs. 4, 5, and 8). Other facts that are important to establishing this element of common control are disputed. The parties dispute whether both CPM and PMS could assign work to Mr. Litzendorf. (Doc. 63, ¶ 28). They also dispute whether both could fire Mr. Litzendorf. (Doc. 63, ¶ 30). Thus, because of factual disputes over whether the activities of CPM and PMS are related, and the ability PMS to exercise control over the alleged employee, summary judgment is inappropriate.

### b. Joint Employers

Once enterprise coverage is established, it is a separate question of whether the businesses are liable as joint employers under § 207. *Chao*, 346 F.3d at 917 ("Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under § 207 are technically separate issues."). If an employee is jointly employed such that "employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the employers during the workweek of considered as one employment for the purposes of the Act." 29 C.F.R. § 791.2(a). This is a fact-specific determination. *Id*. In cases of horizontal joint employment, as is alleged here, regulations detail situations where a joint employment relationship will generally exist.[2] First, there is joint employment if "there is an arrangement between the employers to share the employee's services." *Id*. at § 791.2(b)(1). Second, there is joint employment where "one employer is acting directly or

---

[2] By contrast, vertical joint employment exists when "a company has contracted for workers who are directly employed by an intermediary company." *Donovan*, 346 F.3d at 917. For the tests used to determine vertical joint employement, *see Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *Torres-Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997).

- 8 -

indirectly in the interest of the other employer (or employers) in relation to the employee." *Id.* at § 791.2(b)(2). Finally, joint employment exists "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer. *Id.* at § 791.2(b)(3). The same factual disputes as in the previous section preclude summary judgment here as well. With disputes over common control and the relationship of CPM and PMS's activities, the Court cannot determine whether the Defendants fall under either § 791.2(b)(2) or § 791.2(b)(3).

### c. Employees Engaged in Commerce

In the context of enterprise coverage, the Ninth Circuit rejected the coming-to-rest doctrine. This doctrine states that goods that had originally moved in interstate commerce, but then came to rest prior to intrastate handling and sale, lose their interstate character. *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981). *See also* 29 C.F.R. § 779.242. Instead, the court determined that "even a business engaged in purely intrastate activities can no longer claim exemption from FLSA coverage if the goods its employees handle have moved in interstate commerce." *Donovan*, 652 F.2d at 18. There is "no requirement that the goods have a present involvement in interstate commerce when they are handled or sold." *Id*. The definition of "enterprise engaged in commerce" specifically states that an enterprise's employees are engaged in commerce if they handle, sell, or work on goods that were moved in commerce "by any person." 29 U.S.C. § 203(s)(1)(A)(i). District courts within the Ninth Circuit have followed this broad reading. *See, e.g., Blace v. Lucky Changes, Inc.*, 07-CV-01090-JSW, Doc. 87 (N.D. Cal. 2008) (holding that evidence a restaurant sells imported beer is sufficient to create a question of fact as to whether employees handle or sell goods that have moved in interstate commerce). Here, Mr. Litzendorf has attached copies of receipts demonstrating that he purchased items from Home Depot. (Doc. 59-7). As in *Blace*, this raises questions of fact as to whether the goods Mr. Litzendorf purchased and worked with in his repairs had

- 9 -

traveled in interstate commerce prior to sale. Additionally—although the Ninth Circuit has not explicitly said this is a requirement for commerce in enterprise coverage—the questions of fact over whether Mr. Litzendorf's handling of goods that had traveled in interstate commerce was regular or sporadic remain. As this is a requirement for determining whether an employee is engaged in commerce for individual coverage, it would also, presumably, be a requirement for determining whether an employee is engaged in commerce for enterprise coverage.

**C. Disputes of Fact Preclude Summary Judgment as to the Amount of Hours Worked Per Week by Plaintiff**

Factual disputes preclude the Court from assessing the amount of hours Mr. Litzendorf worked in excess of forty per week. Mr. Litzendorf alleges that most weeks he worked 50–60 hours per week, but this is disputed by Defendants. (Doc. 59, ¶ 16; Doc. 61 CSOF, ¶ 20). Defendants did not maintain complete records of the hours worked by Mr. Litzendorf. (Doc. 59, ¶¶ 17, 20, 21). But, Mr. Litzendorf knows his rate of pay (between $18.00 and $20.00 an hour) and has records of his paychecks. With some paychecks, Mr. Litzendorf's total amount paid divided by the rate of pay (even using $20 to be conservative) exceeds 40 hours per week. (Doc. 59-8, pgs. 2–4, 6–8, 11). If Mr. Litzendorf is determined to be an employee, he can establish that some violations of the FLSA occurred. But, this still leaves many weeks where the hours worked are disputed. Mr. Litzendorf also alleges that Mr. Shreeve would sometimes unilaterally decrease the hours that Mr. Litzendorf submitted, making it inappropriate to rely entirely on Mr. Litzendorf's pay stubs to determine the amount of hours worked in a week. (Doc. 59, ¶ 13; Doc. 61 CSOF, ¶ 13). Similarly, Mr. Litzendorf claims that Mr. Shreeve would deduct rent from the paycheck, again precluding relying on the pay stubs. *Id.* The record contains some suggestion that Mr. Litzendorf stopped working for a period of time due to health issues. (Doc. 61 SSOF, ¶ 24; Doc. 63, ¶ 40). However, the record is not clear on how long that period of time was. Finally, Mr. Litzendorf asserts that he was not paid for his time commuting to work sites or purchasing materials from Home Depot. (Doc. 59, ¶

19; Doc. 61 CSOF, ¶ 19). There are material factual disputes about the how many hours Mr. Litzendorf worked.

### D. Arizona Wage Act

Plaintiff moves for summary judgment on Count II of their Complaint, dealing with the Arizona Wage Act. Neither Plaintiff nor Defendants discuss the Arizona Wage Act, statutes, or cases in their motions for summary judgment. The Court declines to grant summary judgment to either party when the parties have not presented the Court with arguments on that count.

**Conclusion**

Material disputes of fact preclude summary judgment on whether Mr. Litzendorf is an employee or an independent contractor. Disputes of fact also preclude summary judgment on whether there is individual or enterprise coverage, such that were Mr. Litzendorf an employee he would be protected under the FLSA. Further, given that neither party put forward arguments in their motions, the Court declines to grant summary judgment on claims stemming from the Arizona Wage Act. The Court denies both parties' motions.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Plaintiff William Litzendorf (Doc. 58) is **DENIED** and the Motion for Summary Judgment of Defendant Property Maintenance Solutions LLC, et al. (Doc. 56) is **DENIED**.

Dated this 30th day of November, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge